NATIONAL LABOR RELATIONS BOARD v.
REPUBLICAN PUBLISHING CO. et al.

No. 4408.

United States Court of Appeals
First Circuit.

March 16, 1950.

438

Julius G. Serot, Attorney, Washington, D. C. (David P. Findling, Associate Gen-eral Counsel, A. Norman Somers, Assistant General Counsel, and Frederick U. Reel, Attorney, Washington, D. C., with him on petition), for petitioner.

Arthur T. Garvey, Springfield, Mass., for respondents.

Before MAGRUDER, Chief Judge, WOODBURY, Circuit Judge, and SWEENEY, District Judge.

PER CURIAM.

Upon a complaint charging respondents with various unfair labor practices, and after the usual administrative proceedings, the National Labor Relations Board on May 15, 1947, entered its findings, decisions, and order in the case. Among other things it found that respondents Bowles and Republican Company, on December 5, 1945, had transferred Frank MacCarthy from the position of photographer on the Springfield Union to that of reporter (a position less desirable from MacCarthy's point of view, though it entailed no reduction in his weekly pay check); that the motive of the transfer was to penalize MacCarthy for his membership and activities in the Newspaper Guild; that by such discrimination respondents had committed the unfair labor practice described in § 8(3) of the Act, 49 Stat. 452, 29 U.S.C.A. § 158(3). Accordingly, the Board ordered said respondents to "offer" Frank MacCarthy "immediate and full reinstatement" to the position which he occupied on December 5, 1945, or to a substantially equivalent position, without prejudice to his seniority or other rights and privileges.

Respondents did not comply with this provision of the Board's order. The Board petitioned this court for enforcement of this order, and on May 12, 1949, we issued our decree enforcing the order. 1 Cir., 174 F.2d 474.

On February 15, 1950, the Board filed the present petition seeking an order from this court requiring respondents Bowles and Republican Company to show cause why they should not be adjudged in contempt of this court by reason of their continued failure and refusal to offer MacCarthy reinstatement to the position of photographer.

The petition was supported by an affidavit by MacCarthy, executed January 14, 1950, to the effect that, though he had continuously desired and presently desired employment with respondents as a photographer, respondents since December 5, 1945 have continuously failed and refused to offer him such reinstatement; that since May 12, 1949, the date of the decree of this court, he has sustained the following losses because of respondents' failure and refusal to reinstate him: "I am informed that the rate at which photographers have been employed by respondents since May 12, 1949, is $77.50 per week. Accordingly, if respondents had complied with the decree of this Court, I would have earned to date $2759.00. My net interim earnings during that period have been $1239.60. My losses to date therefore total $1519.40." The Board also submitted affidavits by Robert E. Greene and Julius G. Serot, attorneys in the employ of the Board, stating that on November 29, 1949, in the course of their duties in investigating the matter of compliance with this court's decree, they had had a conference with respondent Bowles at which Bowles promised and agreed that respondents would offer MacCarthy reinstatement to the position formerly held by him as photographer, this offer to be made in writing on or before December 9, 1949.

On February 20, 1950, this court issued its order directing that respondents Bowles and Republican Company make answer to the contempt petition on or before March 2, 1950, the answer to contain "specific admissions or denials to, or meeting by affirmative defense, each allegation of said petition and the facts set forth in the supporting affidavits thereto attached;" and directing further that said respondents appear before this court on March 7, 1950, and then and there show cause why they should not be adjudged in contempt as prayed for in the petition.

At our session on March 7, 1950, we heard counsel for the parties, on the Board's petition, the answer of respondents thereto, and the entire record in the case. The Board advanced the contention that, from the petition and answer, it was apparent that there was no genuine and material issue of fact necessitating a taking of testimony by this court. With this contention we agree.

In part, respondents appear to treat their answer as a petition for rehearing, seeking to reargue some of the matters adjudicated by our decision and enforcement decree. It is too late for that.

■ Respondents admit that they have never offered MacCarthy reinstatement to his position as photographer. They allege that neither MacCarthy nor any one acting on his behalf ever made any demand for reinstatement until November 29, 1949. If this were true, it would be wholly irrelevant. The order required respondents to offer MacCarthy full and immediate reinstatement to the position of photographer. It was thus incumbent upon respondents, without waiting for a formal demand by MacCarthy, to take the initiative of communicating with him and tendering him back his old job. In that respect the terms of the order are to be contrasted with another provision of the order, directing respondents "upon request" to bargain collectively with the certificated union.

■ By way of affirmative defense, the answer sets forth certain alleged events which took place after December 5, 1945, the date of the unfair labor practice with respect to MacCarthy, and before May 15, 1947, the date of the Board's order: It is alleged that on September 26, 1946, the members of the three mechanical unions went out on strike; that on or about November 2, 1946, publication of the newspapers having been suspended since the date of the strike, Republican Publishing Company gave notice to certain members of the editorial staff, including Frank MacCarthy, that their services would no longer be needed; that "as a result of this notice, relationship of employer-employee that had heretofore existed between Frank MacCarthy and the Republican Publishing Company ceased"; that on or about November 7, 1946, the members of the Springfield Newspaper Guild, of which MacCarthy was a member, voted to strike.

It is obvious that respondents, by notice terminating altogether MacCarthy's em-

ployment as incident to a strike, cannot relieve themselves of the obligation, after publication is resumed, to obey a remedial order of the Board appropriately designed to undo the effect of an unfair labor practice committed by respondents prior to such strike. It appears that, at the date of the Board's order, publication of the Springfield Union had been resumed, and respondents were then in no way disabled from complying with the Board's reinstatement order. Publication of the Springfield Union has continued; and in fact counsel for respondents conceded at the oral hearing before us that at this day the Springfield Union has on its staff photographers of less seniority than MacCarthy. There is no showing of inability to comply with our decree for reinstatement of MacCarthy to his position as photographer.

Respondents' answer contains this vague general allegation: "That Frank MacCarthy is not now physically and mentally fit to carry out the duties of a newspaper photographer." If this were assumed to be the fact, it would in no way tend to establish inability on the part of respondents to obey our decree of May 12, 1949, directing respondents to offer MacCarthy immediate reinstatement to his former position. In failing to make the offer, respondents are undoubtedly in contempt of our decree. If there had been some supervening change of circumstances which made compliance with our decree unjust or inappropriate, respondents should promptly have moved this court for modification of the decree, setting forth in detail the facts deemed to warrant such modification. Instead of doing that, respondents sat tight and did nothing, until called into court to answer the petition for a contempt citation.

At the hearing before us, when counsel for respondents was discussing this allegation of MacCarthy's alleged physical and mental unfitness, he suggested that the job of a newspaper photographer was "a young man's game" and that MacCarthy was now too old for the job. It is not suggested that MacCarthy was too old for the job on December 5, 1945, the date of the unfair labor practice. MacCarthy now of course is over four years older than he was at that date; but respondents are certainly entitled to no advantage from their own delay in repairing the unfair labor practice, as ordered by the Board and by this court. Of course, if respondents should offer MacCarthy reinstatement as photographer, and after a reasonable period of trial respondents should in good faith remove him from that job because of his inability to render proper performance, that would be a different case.

In addition to reinstatement, the Board asks this court to require respondents to make MacCarthy whole "for any loss of pay that he may have suffered subsequent to the entry of the Decree of this Court" by reason of the failure of respondents to comply with the decree. The Board's order did not make provision for any back pay award from the date of the discriminatory transfer to the date of the offer of reinstatement, for the reason that the transfer did not involve a reduction in pay. However, since respondents have been in contempt of our decree from and after May 12, 1949, they, in order to purge themselves of contempt, must not only offer MacCarthy back his position of photographer, without prejudice to his seniority rights, but also make good to him the loss he has suffered since May 12, 1949, resulting from the failure of respondents to comply with our decree. Respondents have not challenged the dollars-and-cents computation by MacCarthy of such loss, quoted above from his affidavit. That computation was as of the date of the affidavit, January 14, 1950, showing a loss of $1,519.40. Since then he may have suffered additional loss, the difference between $77.50 per week, which would have been his salary as photographer, and his net interim earnings since that date. Whatever this amount may be, MacCarthy is entitled to recover this also.

A decree will be entered adjudging respondents Republican Company, and Sherman H. Bowles, in civil contempt of the decree of this court entered May 12, 1949, and requiring said respondents to purge themselves of such contempt: (1) By forthwith offering Frank MacCarthy immediate and full reinstatement to the po-

sition which he occupied on December 5, 1945, or to a substantially equivalent position, without prejudice to his seniority and other rights and privileges; (2) by paying to Frank MacCarthy forthwith the sum of $1,519.40; (3) by paying Frank MacCarthy, in addition, any further loss he may have suffered since January 14, 1950, as indicated above in this opinion, any disagreement between the parties as to the exact amount of such additional loss to be referred to this court for determination and supplemental decree; and (4) by making reimbursement to the Board for all proper costs incurred in the preparation and prosecution of this petition for contempt, the amount thereof, in the event of disagreement between the parties, to be referred to this court for determination and supplemental decree. Our decree will further provide that if respondents fail to comply with items (1) and (2) above within seven days, a capias will issue directing the United States Marshal to take into custody the individual respondent, to be held until he effects such compliance, or until further order of the court.