Amadeo Murga, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
Se trata de un recurso de certiorari contra la resolución emitida el 24 de junio de 1996 (Hon. Ramón E. Febus Bernardini, Juez Superior) en la que revoca la decisión emitida por la Junta de Apelaciones del Sistema de Administración de Personal (J.A.S.A.P.) y ordena a la Policía de Puerto Rico que complete el proceso del reclutamiento del Sr. Luis A. Padín Adames.
*709 La Policía de Puerto Rico representada por la Oficina del Procurador, señala en su recurso que el tribunal de instancia erró al no determinar que el recurrido había incurrido en incuria en el trámite de su apelación ante J.A.S.A.P. y al determinar, asimismo, que el referido recurso no era académico.
A solicitud de la parte recurrente detuvimos los procedimientos de la ejecución de la sentencia dictada y ordenamos al recurrido expresarse en torno a los planteamientos hechos en el por la parte recurrente.
Este compareció mediante réplica presentada el 16 de septiembre de 1996 y estamos en posición de resolver el mismo.
Nuestro análisis nos lleva a resolver que los errores señalados fueron cometidos y que debe revocarse la resolución emitida por el tribunal recurrido y declarar que el recurrido no tiene derecho a ingresar a la Policía de Puerto Rico.
Los hechos pertinentes al análisis jurídico del recurso narrados cronológicamente son los siguientes.
I
El Sr. Luis A. Padín Adames nació el 19 de junio de 1949. Para febrero de 1986 acudió al Cuartel General de la Policía de Puerto Rico en Hato Rey donde llenó una solicitud de ingreso para ser miembro de la Policía de Puerto Rico. Poco tiempo más tarde fue requerido para que asistiera el día 6 de marzo de 1986 a una entrevista ante la Junta de Preselección de Candidatos, mediante carta suscrita por la Sra. Migdalia Vega Arce, Directora Interina de Reclutamiento. Para el 16 de mayo se solicitó su autorización para practicarle una investigación confidencial. Fue visitado en su hogar en fecha posterior por uh agente investigador de la Policía de nombre Roberto Rodríguez "que al enterarse que él era la persona investigada se marchó señalándole que posteriormente la Policía de Puerto Rico le citaría". En junio de 1986 el Sr. Padín Adames acudió a la Oficina de Personal de la Policía donde le informaron no aparecían los récords de su solicitud. Cuando el recurrido le mostró copia de las comunicaciones recibidas de la Policía fue informado que una vez apareciera el expediente volvería a ser citado.
Nada ocurrió hasta aproximadamente tres años más tarde cuando el recurrido le cursó una comunicación al Superintendente de la Policía, de fecha 30 de mayo de 1989. En ésta le requería al Superintendente una cita en relación con su solicitud de empleo en la Policía de Puerto Rico.
El 12 de junio siguiente el entonces Superintendente de la Policía Ledo. Ismael Betancourt Lebrón contestó la carta informándole que había remitido su comunicación al Superintendente Auxiliar en Servicios Gerenciales. Poco tiempo después el 7 de julio de 1989 le fue notificado al Sr. Padín Adames que luego de una evaluación de su expediente resultaba que "él había sobrepasado la edad máxima que dispone el Artículo 12.2, inciso (3) del Reglamento de la Policía que son 36 años para ingresar a la Policía". En. efecto, para el mes de febrero de 1986, fecha en que el Sr. Padín Adames acudió a solicitar empleo en la Policía de Puerto Rico el Reglamento de la Policía en su Sección 12.2, inciso (3) disponía que la edad máxima'para ingresar como miembro de la fuerza policíaca eran los 36 años.
n
En julio de 1989, fecha en que se rechazó formalmente por escrito la solicitud del Sr. Padín Adames a base de que éste excedía la edad reglamentaria, dicha edad continuaba siendo 36 años. Posteriormente, la Policía de Puerto Rico aumentó a 39 la edad máxima para el ingreso a la fuerza. Esta enmienda ocurrió 18 de junio de 1990. 
Cuando el Sr. Padín Adames recibió la carta rechazando su solicitud allá para julio de 1989, consultó con el Ledo. Juan José Noya, quien le indicó que tenía el término de treinta días para recurrir en apelación a J.A.S.A.P. Este, no obstante, no presentó la apelación hasta el 8 de abril de 1991.
La apelación del Sr. Padín Adames a J.A.S.A.P. fue desestimada por esta agencia mediante resolución de 10 de abril de 1991. En esa ocasión J.A.S.A.P. se basó en que la decisión objeto de la apelación fue notificada por *710 la Policía de Puerto Rico en julio de 1989 y que la apelación se había instado en 1991, fuera del término jurisdiccional establecido en la Sección 7.15(1) de la Ley de Personal, Ley Número 5 del 11 de octubre de 1975, según enmendada. Citó en apoyo de su determinación lo resuelto por nuestro Tribunal Supremo en Digna García Troncoso v. Administración del Derecho al Trabajo, 108 D.P.R. 53 (1978). El Sr. Padín Adames recurrió de esa resolución al Tribunal Superior, Sala de Aguadilla. Este mediante sentencia de 11 de octubre de 1994 emitida por el Hon. Rafael Ortiz Cardón, Juez de Apelaciones, asignado a la Unidad de Jueces de Apelaciones, revocó la resolución desestimatoria al resolver que no podía desestimarse la apelación de éste sin una vista en la que se determinara si procedía imputarle incuria al Sr. Padín Adames. En su sentencia el tribunal advirtió que aunque el asunto de su consideración pudo haber dejado de ser justiciable por haberse tornado en académico en el momento en que el señor Padín cumplió la edad máxima de 36 años para ingresar a la Policía de Puerto Rico que establece el Reglamento de la Policía de Puerto Rico, el señor Padín no sólo tiene derecho a reclamar se tramite su solicitud de ingreso cumpliendo con las normas establecidas por el Reglamento de la Policía, sino también tiene derecho a reclamar información sobre el resultado de la investigación que efectuó la Policía sobre su carácter, reputación y hábitos o cualquiera otra información que la Policía pudo haber obtenido y utilizado para no continuar el trámite de su solicitud de ingreso antes de él haber cumplido la edad máxima para ingresos. 
Devuelto el caso, J.A.S.A.P. celebró una vista el 4 de abril de 1995 para cumplir con el mandato del Tribunal Superior. La vista fue celebrada con la comparecencia de ambas partes ante un oficial examinador. Este emitió un informe con determinaciones de hechos y conclusiones de derecho recomendando que J.A.S.A.P. se declarara sin jurisdicción a base de que era aplicable la doctrina de la incuria al Sr. Padín Adames. Concluyó que aun suponiendo que existiera jurisdicción, la presente controversia se había tornado académica, ya que el Sr. Padín Adames había cumplido el máximo del límite de la edad reglamentaria para ingreso en la Policía de Puerto Rico.
J.A.S.A.P. adoptó la recomendación del Oficial Examinador y desestimó el del Sr. Padín Adames. Este recurrió al Tribunal de Primera Instancia, Sala Superior de Aguadilla, el que mediante resolución del 24 de junio de 1996 (Hon. Ramón E. Febus Bernardini) revocó la decisión de la Junta de Apelaciones y ordenó que se completara el reclutamiento del Sr. Padín Adames.
ni
La relación de hechos que hemos llevado nos revelan claramente que tanto al momento en que el recurrido solicitó por primera vez ingresar al Cuerpo de la Policía (febrero de 1986) como en el momento en que formalmente se rechazó su solicitud más de tres años después (julio 1989) éste no cualificaba para ingresar en dicho Cuerpo, pues había sobrepasado la edad máxima de ingreso: 36 años. La enmienda aumentando la edad a 39 años fue aprobada el 18 de junio de 1990 cuando al Sr. Padín Adames le faltaba escasamente un día para cumplir los 40 años. La enmienda al Reglamento no tiene carácter retroactivo, por lo que resulta claro que el Sr. Padín Adames, nunca cualificó para ingresar al cuerpo de la Policía por razón de haber excedido el límite de edad.
Ante tal cuadro de hechos, aun asumiendo que su apelación presentada en J.A.S.A.P. no fuera tardía por no haberse advertido en la comunicación que rechazó su petición de ingreso su derecho a apelar a J.A.S.A.P., al Sr. Padín Adames no se le podía conceder el remedio de ingresar en el Cuerpo de la Policía, pues siempre se excedió en el límite reglamentario de edad para ingresar en dicho Cuerpo. En tal sentido su recurso resulta ser académico.
Cualquier otro remedio, a que pudiera tener derecho el recurrente en J.A.S.A.P., relativo a la información que sobre su persona obtuvo y extravió la Policía, se enfrenta a la objeción reiterada por la Policía de Puerto Rico ante J.A.S.A.P. y ante el tribunal recurrido de que le es aplicable la doctrina de la incuria. Esta impediría que se considerara el de la parte recurrente a despecho de que a éste no se le informó en la determinación adversa emitida por la Policía de Puerto Rico de su derecho a apelar tal determinación dentro del plazo de treinta días provisto por la Sección 4.2 de la Ley de Procedimiento Administrativo Uniforme. (L.P.A.U.). 
Nuestro Tribunal Supremo ha definido la doctrina de la incuria "como dejadez o negligencia en el reclamo de *711 un derecho, lo cual en conjunto con el transcurso del tiempo y otras circunstancias que causan perjuicio a la parte adversa, opera como un impedimento en una carta de equidad. "Aponte Martínez v. Collazo, 90 J.T.S. 34, Opinión de 8 de marzo de 1990, _ D.P.R. _. Nuestro Tribunal Supremo en Pueblo v. Tribunal Superior, 81 D.P.R. 904, 912, sefialó como elementos de dicha doctrina lo siguiente:

"Claro está, no basta el transcurso de un tiempo determinado para que exista lo que se denomina técnicamente incuria o laches. Es imprescindible que la conducta negligente del peticionario, al no promover con prontitud y diligencia la expedición del auto, haya causado una demora innecesaria e indebida que de hecho perjudica a las demás personas interesadas. Adviértase que la teoría de laches envuelve dos elementos: (1) la dilación injustificada en la presentación del recurso; y (2) el perjuicio que ello pueda ocasionar a otras personas, según las circunstancias. Además hay que considerar el efecto que tendría la concesión o la denegación del auto sobre los intereses privados y sociales en presencia. Cuando la demora no perjudica a nadie o el perjuicio causado es leve, si se le compara con el daño que sufriría el peticionario o el público en caso de librarse el auto, el lapso de tiempo transcurrido tiene que ser grande para que exista la incuria equitativa. En cambio, aunque la dilación sea relativamente corta, si resulta en bien para el interés público o los derechos individuales del acusado, procede denegar el auto a base de la doctrina de laches. Sobre todo es preciso tener en cuenta los méritos y demás circunstancias del caso específico, ya que la doctrina de incuria sigue vinculada a la idea fundamental de la equidad: se acude a la "razón" y a la "conciencia" para encontrar soluciones justas, apartándose del rigorismo intransigente de los términos fatales."

En el presente caso resulta claro que el agraviado recibió asesoramiento sobre su derecho a apelar casi constantemente con la notificación de la decisión adversa al consultar con un abogado, el que le informó sobre tal derecho. No obstante, vino a radicar su petición casi dos años después; la dilación, extremadamente extensa, no ha sido justificada por el Sr. Padín Adames. Debemos llegar a la conclusión que durante casi dos años se cruzó de brazos, no obstante estar apercibido de su derecho a apelar. En J.R.T. v. P.R. Telephone, Co., Inc., 107 D.P.R. 76 (1978), nuestro Tribunal Supremo resolvió que no se justificaba una tardanza de trece meses para solicitar ante la Junta que se cumpliera con un laudo de arbitraje.
En Rivera Rivera v. Departamento de Servicios Sociales, 92 J.T.S. 169, Opinión del 15 de diciembre de 1992 _ D.P.R. _se trataba de la tardanza de un año y medio en apelar a J.A.S.A.P. una decisión adversa del Departamento de Servicios Sociales. Nuestro Tribunal Supremo al resolver que se le debía dar curso al de la parte agraviada expresó:
"El presente caso trata sobre una dilación de aproximadamente año y medio. Ello, de ordinario, sería suficiente para decretar que hubo incuria de parte del empleado. Pesa sobre nuestro ánimo, sin embargo, no sólo el hecho de que el Departamento de Servicios Sociales no le informó a la peticionaria sobre su derecho de apelar a J.A.S.A.P. ni del plazo que tenía para cumplir con este trámite, al denegarse originalmente su reclamación, sino que, no obstante la peticionaria acudir ante otra agencia gubernamental, la O.C.A.P., ésta tampoco le advirtió del mismo. En otras palabras, la peticionaria al originalmente serle denegada su reclamación, no se cruzó de brazos. García v. Adm. del Derecho al Trabajo, ante, a la página 58. Insatisfecha, acudió ante una segunda agencia, la cual tampoco la orientó adecuadamente sobre su derecho a apelar. Es de notar, en adición, que cuando la demandante adviene en conocimiento de una decisión favorable a su posición, por parte de J.A.S.A.P., ella prontamente acude ante dicho foro administrativo a reclamar sus derechos. Por otro lado, la agencia no ha demostrado, en su comparecencia ante el Tribunal, que le causa un grave perjuicio el hecho de que le permitamos a la empleada peticionaria tener su "día en corte a su alegado derecho a percibir un salario mayor del concedido. J.R.T. v. A.E.E., ante."
La dilación en nuestro caso excede a la del caso Rivera Rivera y los hechos son distinguibles. No obstante, la norma de nuestro Tribunal Supremo es en el sentido que el largo de la tardanza per se no es el único factor a considerar, aunque a mayor extensión de la misma, más se inclina la balanza en contra de la parte agraviada.
El otro factor a considerar para determinar si es aplicable la doctrina de la incuria es el perjuicio que se le causa con la dilación a la otra parte. En este caso surge que luego de dos años el expediente del recurrido permanece extraviado y que la tardanza en recurrir a J.A.S.A.P. puede haber sido un factor contribuyente a que *712 el expediente no se haya podido localizar. Considerando además, que cualquier remedio a que tuviera derecho el recurrente estaña limitado a obtener la devolución de unos expedientes los cuales permanecen extraviados o en su defecto, a una acción de daños y perjuicios lo que no le puede conceder J.A.S.A.P., nos encontramos ante una situación en que no se le ha causado perjuicio a la Agencia con la dilación en presentar la apelación. Además, poco conseguiríamos si nos abstuviéramos de aplicar la doctrina de la incuria, en vista de que los documentos permanecen extraviados y J.A.S.A.P. no le puede conceder al recurrido daños y perjuicios. Siendo ésta una doctrina de equidad, la extremada tardanza no explicada del recurrido, el perjuicio que se le puede haber causado a la recurrente, así como la ausencia de remedio a que de todas rnaneras éste estaría sujeto, nos llevan a aplicar dicha doctrina al presente caso.
Por tales razones, se expide el auto, se revoca la resolución recurrida y se desestima el recurso por académico en lo concerniente a la solicitud de ingreso a la Policía de parte del Sr. Pádín Adames; y por incuria, se desestima en cuanto a su derecho a recurrir a J.A.S.A.P. en relación con el extravío de los documentos personales y confidenciales relacionados con la solicitud de ingreso.
Regístrese y notifíquese.
Así lo acordó y manda el Tribunal y lo certifica la Señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 96 DTA 172
1. Apéndice, pág. 25.
2. Apéndice, pág. 26.
3. Apéndice, pág. 27.
4. Enmienda al Reglamento 4261 aprobado por el Hon. Gobernador de Puerto Rico el 4 de junio de 1990 efectivo el 18 de junio de 1990.
5. Apéndice, pág. 18.
6. 32 L.P.R.A., see. 2172.